730 P.2d 1086

**MAGUIRE, WARD, MAGUIRE & EL-DREDGE, A Professional Corporation, Plaintiff-Appellant,**

v.

**IDAHO INSURANCE GUARANTY ASSOCIATION, Defendant-Respondent.**

**No. 16406.**

Court of Appeals of Idaho.

Dec. 30, 1986.

David H. Maguire (Ward, Maguire, Bybee & Kline), Pocatello, for plaintiff-appellant.

Paul S. Street and Larry D. Spurgeon (argued) (Moffatt, Thomas, Barrett & Blanton), Boise for defendant-respondent.

BURNETT, Judge.

This appeal presents an issue of first impression in Idaho. The question is whether the Idaho Insurance Guaranty Association is required to pay attorney fees incurred by an insurance company before it became insolvent. The district judge held that the Association had no such obligation. We affirm.

The material facts are undisputed. An eight-year-old boy was struck and killed by a truck. The child's parents sued the owner and the driver of the truck for wrongful death. The defendants referred the claim to the owner's insurance carrier, the Early American Insurance Company. Pursuant to its obligation under the insurance contract, Early American undertook defense of the suit, retaining the Pocatello law firm of Maguire, Ward, Maguire and Eldredge. The law firm filed an answer and performed substantial services, billing Early American on an open account. Several weeks before the scheduled trial, Early American was declared insolvent. As provided in title 41, chapter 36, of the Idaho Code, the Idaho Insurance Guaranty Association assumed responsibility for the case. The Association asked the Maguire firm to continue handling the defense, but it made no commitment to pay the firm's preinsolvency fees. The firm kept the case, eventually negotiating a settlement and billing the Association for all of its services. The Association paid only the postinsolvency portion. The firm then filed the instant lawsuit. The district judge entered summary judgment for the Association. This appeal followed.

Our analysis begins by noting that the Association is a creature of statute. It has only the powers and obligations given to it by the Legislature. The statutory scheme creating the Association is patterned after a model act drafted by the National Association of Insurance Commissioners. Idaho Code § 41–3606 requires all insurance companies doing business in this state to belong to the Association. Section 41–3605 provides that if a member insurer becomes insolvent, the Association will become obligated, within certain limits not relevant here, to pay a "covered claim." Section 41–3605 defines a covered claim as "an unpaid claim ... which arises out of and is within the coverage of an insurance policy to which this act applies...."

We think it evident that a law firm's bill for attorney fees is not a "covered claim" within this definition. Such a bill does not "arise out of," nor is it "within the coverage of," the insurance policy. Rather, it arises out of a separate contract—the legal services agreement between the law firm and the insurance company. Although the insurance policy provides that the insured is entitled to a defense, it does not confer an expectancy upon any particular law firm. When a law firm is retained, its right to be paid rests solely upon the legal services agreement.

One of the purposes for legislation creating the Association is "to avoid financial loss to claimants or policy holders because of the insolvency of an insurer...." I.C. § 41–3602. These protected persons depend for their compensation upon the viability of the insurance company when a loss occurs. They do not know when a claim will be made, nor do they typically have ongoing contacts with the insurer. In contrast, other creditors of insurance companies, such as attorneys, transact credit arrangements with the insurer. They can avoid the eventual consequences of the insurer's insolvency by refusing to extend credit, or they can minimize the impact of insolvency by negotiating contract provisions for frequent billing and payment. They are creditors by choice. The Associa-

tion was not created for their benefit. *See Metry, Metry, Sanom & Ashare v. Michigan Property and Casualty Guaranty Ass'n.,* 403 Mich. 117, 267 N.W.2d 695 (1978) (construing comparable Michigan statute). In other states where the model act has been construed, the courts uniformly have arrived at the same result. *See White v. Alaska Ins. Guaranty Ass'n.,* 592 P.2d 367 (Alaska 1979); *Metry, Metry, Sanom & Ashare v. Michigan Property and Casualty Guaranty Ass'n., supra; Ohio Ins. Guaranty Ass'n. v. Simpson,* 1 Ohio App.3d 112, 439 N.E.2d 1257 (1981); *Greenfield v. Pennsylvania Ins. Guaranty Ass'n.,* 256 Pa.Super. 136, 389 A.2d 638 (1978).

The law firm in this case urges that part of Idaho's version of the model act, at I.C. § 41–3608(1)(b), suggests a different outcome. This section provides that "[t]he Association shall be *deemed the insurer* to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer...." (Emphasis added.) The law firm's argument, as we understand it, is that the Idaho statute imposes upon the Association the same duty to defend which the insurance policy previously imposed upon the insolvent insurer. But even if the argument is correct, there was no unperformed duty in this case to furnish a preinsolvency defense. The insurer had performed that duty by engaging the services of the law firm. The insurance policy was not violated by the insurer's failure to *pay* the law firm; such failure was a breach of the legal services agreement. In any event, as explained above, the obligation to pay for those services was not a "covered claim." Section 41–3608(1)(b) provides that the Association is deemed the insurer only "to the extent of ... the covered claims...." The statute does not enlarge the Association's obligations. The law firm's reliance upon it is misplaced.

The law firm has raised no issue of unjust enrichment. However, the firm has advanced a policy argument, urging that the availability of an adequate defense for an insured could be impaired if the Association does not pay preinsolvency fees. The firm notes that when such fees are not paid, an attorney could assert a possessory lien on the case file and thus impede a continuing defense. Possessory liens are recognized in Idaho. *Frazee v. Frazee,* 104 Idaho 463, 660 P.2d 928 (1983); *Curtis v. Richards,* 4 Idaho 434, 40 P. 57 (1895). *Compare* I.C. § 3–205 (authorizing a charging lien). We note that some courts have not permitted attorneys to impose possessory liens in circumstances similar to those presented here. These courts have declared that when an insured has paid his insurance premiums, he has an overriding entitlement to an uninterrupted defense under the policy. *Cooper v. Cranin,* 104 A.D.2d 550, 479 N.Y.S.2d 254 (1984); *Turzio v. Ravenhall,* 34 Misc.2d 17, 227 N.Y. S.2d 103 (City Ct.1962). *See generally* S. SPIESER, ATTORNEYS' FEES § 16:9 (1973). However, we need not test the limits of possessory liens today. The underlying fact is that the law firm did not assert such a lien. It accepted the Association's offer to remain in the case and to be paid for postinsolvency services. The firm undoubtedly was motivated by a sense of client loyalty as well as by its own business judgment. It should be commended for serving the interests of its clients. But the firm's laudable motives do not alter the Association's statutorily prescribed responsibilities.

We conclude that the Idaho Code imposes no obligation upon the Association to pay attorney fees incurred by an insurance company before insolvency. The judgment of the district court is affirmed. Costs to the respondent. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.